

THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at GREENBELT

| | |
|---|---|
| In re: | *    Case No.   13-13847-TJC |
| Vincent L. Abell | *    Chapter   11 |
|        Debtor | * |
| *    *    *    *    *    * | * |
| Roger Schlossberg, Trustee | * |
|        Plaintiff | * |
| vs. | *    Adversary No.   14-00056 |
| Jocelyn Cordice Basnett | * |
|        Defendant | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF DECISION

Roger Schlossberg, the Chapter 11 trustee for the estate of Vincent L. Abell (the "Plaintiff"), filed a four-count complaint against defendant Jocelyn Cordice Basnett (the "Defendant") seeking a declaratory judgment and quiet title to a parcel of real property located at 1416 Half Street, SW, Washington, D.C. 20024 (the "Property"). Now before the court is the Plaintiff's motion for summary judgment, ECF 27, and an amended opposition and cross-motion for summary judgment filed by the Defendant, ECF 41, as those papers have been further amended and supplemented in the record.

1

The Plaintiff contends the Property was acquired by the debtor, Vincent Abell, pursuant to a deed dated July 14, 2004, and recorded on March 23, 2007 (the "Abell Deed"). The Defendant asserts she holds legal title to the Property by way of an unsigned deed dated November 3, 2004, recorded that same date (the "Defendant's Deed"). She also contends the Abell Deed was obtained by fraud and that she timely rescinded the sale agreement that led to the Abell Deed. The court held two hearings on summary judgment and provided the Defendant numerous opportunities to file documents to support her position. *See* ECF 46 and 54. For the following reasons, the court will deny the cross-motions for summary judgment, but in doing so, will narrow the issues for trial.

## Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a) and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) & (O).

## Background

The parties do not agree upon a statement of material facts that are not in dispute. The facts are taken from the exhibits offered by the parties that are not challenged and other statements submitted by the parties.

On March 5, 2013, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On September 19, 2013, the court approved the appointment of the Plaintiff as the Chapter 11 trustee.

Prior to filing for bankruptcy, the debtor owned and operated, either individually or through various entities, numerous residential rental properties. ECF 1 at ¶ 7. The debtor acquired a number of these properties by purchasing the property from a homeowner who faced

2

foreclosure. *Id.* The debtor would then lease the property back to the homeowner. *Id.* At the time of the lease, the homeowner was provided with an option agreement whereby the homeowner could repurchase the property at an agreed upon time and for an agreed upon price. *Id.*

The debtor's real estate operation was much less innocuous than the foregoing description taken from the Plaintiff's motion. In an earlier adversary proceeding in the bankruptcy case, in which the Plaintiff also was the plaintiff, the court stated:

> The [Plaintiff] characterizes Mr. Abell as a serial fraudster, and indeed it is difficult to dispute that characterization on the record before the court. Mr. Abell has judgments against him for conducting so-called mortgage rescue scams. At one trial, evidence was introduced showing he engaged in 100 such pre-foreclosure transactions. *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 53 (D.C. 2010), cert. denied, 132 S. Ct. 111, 181 L. Ed. 2d 36 (2011).

*Schlossberg v. Abell (In re Abell)*, Nos. 13-13847-TJC, 14-00417, 2016 WL 1556024 at *3 (Bankr. D. Md. Apr. 14, 2016); *see also id.* (describing various court cases addressing the debtor's mortgage scam operation). This background is pertinent because the Defendant contends she was the victim of the debtor's mortgage rescue scheme.

The Property was owned by Carl Basnett, who was married to the Defendant. Mr. Basnett purchased the Property and was the sole fee simple owner throughout the course of his lifetime, including the period during their marriage. ECF 52 at p. 7 of 25. At the time of his death in 1995, the Property became a part of his probate estate. The Defendant continued to pay the outstanding mortgage, but eventually fell behind. In 2001, a petition for probate of Mr. Basnett's estate was filed in the Superior Court of the District of Columbia, Probate Division. On April 17, 2002, Daniel Crowley, Esq., was appointed by the Superior Court to be the personal representative of Mr. Basnett's probate estate. Mr. Crowley is now deceased.

Mr. Crowley filed a Second and Final Account with the Probate Division on February 13, 2004.  ECF 31-2 at p. 4 of 16.  Schedule I of the Second and Final Account (Distribution of Principal) states that Mr. Crowley would distribute the Property to the Defendant upon approval of this account.  *Id.* at p. 14 of 16.  Mr. Crowley also filed a verified Request for Compensation, seeking compensation for services he already performed as well as an additional $350 "for the services and costs of a real estate attorney to prepare and record the deed conveying the [Property] to decedent's widow."  ECF 31-3 at 8 of 25.

The Second and Final Account was approved by a Certification and Order, signed by Judge Hamilton of the District of Columbia Superior Court and entered on April 23, 2004 (the "Certification and Order").  ECF 37 at p. 78 of 108.  The Certification and Order states "[i]t is further ordered that the matter of termination of the appointment of the personal representative is held in abeyance pending the approval of a petition filed in accordance with Probate Division Rule 123."  *Id.* at 78.

By facsimile dated July 12, 2004, Calvin Baltimore sent to Mr. Crowley a sale agreement (the "Sale Agreement") for the Property.  ECF 37 at pp. 49-52 of 108.  The Sale Agreement is between the debtor, or his assignee, Mr. Crowley, as personal representative, and the Defendant, as "heir."  *Id.* at p. 50.  It provided for the sale of the Property to the debtor for the "mortgage balance foreclosure cost & $3,000 cash out."  *Id.* at p. 50 of 108.  Under the agreement, Modern Management Company—an entity owned by the debtor—was to hold $36,000 in trust, $3,000 of which was to be provided to the Defendant as the "cash out."  *Id.*  The balance of $33,000 was listed as the "estimated foreclosure cost."  Paragraph 19 of the Sale Agreement listed the closing date of July 22, 2004.  *Id.* at p. 52 of 108.  Finally, the Sale Agreement provided five special clauses:

4

- The property is transferred as is.
- The purchaser will lease to seller beginning August 1, 2004 @ 1,257/mo with a 10 day 5% late fee.
- The purchaser will transfer back to seller within one year for $152,000.00 est on reinstatement figures.
- If the seller is 2 consecutive months without payments then the transfer back is null & void.
- If Jocelyn C. Basnet [sic] does not agree with final reinstatement & contract figures, she may cancel this contract.

*Id.* The Sale Agreement bears the signatures of the Defendant and Mr. Samuel Cooper as witness, who is also listed as "Atty Samuel Cooper." *Id.*

By facsimile dated August 8, 2004, Mr. Baltimore sent to Mr. Crowley an unsigned lease agreement (the "Unsigned Lease") and unsigned option agreement (the "Unsigned Option"). *Id.* at pp. 57-66 of 108. The cover page of the facsimile contains the following note:

> Mr. Samuel Cooper – Ms. Basnett['s] friend states that he is not pleased with this agreement. He asked that I fax it to you so he & you could discuss it & that we discuss it together. Please call them & then call me. Thanks.

*Id.* at p. 57 of 108. The Unsigned Lease provided for a term of one year beginning on September 1, 2004, and ending on August 31, 2005. *Id.* at p. 58 of 108. The monthly rent payments were set at $1,257. *Id.* Under the Unsigned Option, the Defendant had the option to purchase back the Property any time prior to July 31, 2005, for the option price of $157,185.51. *Id.* at p. 65 of 108. The Option Agreement was set to terminate after July 31, 2005. *Id.*

Plaintiff has submitted a signed copy of a lease agreement (the "Lease") between the Defendant and Modern Management Company. ECF 1-3 at p. 2 of 10. The terms of the Lease mirror those of the Unsigned Lease except for the following changes:

- The term was changed to begin October 1, 2004, and end on September 30, 2005.
- The Defendant's monthly payment was reduced to $857, with the first payment was set to be due December 1, 2004.

*Id.* The Lease bears the signatures of the debtor as representative of Modern Management Company and the Defendant. *Id.*

Also attached to the complaint is a signed copy of the option agreement (the "Option Agreement"). *Id.* at p. 9 of 10. The terms of Option Agreement mirror the Unsigned Option but for two changes:

- The option price was increased to $167,000.
- The expiration of the option was extended to September 30, 2005.

*Id.* The Option Agreement purports to be signed by the debtor, the Defendant, and Mr. Crowley. *Id.*

During this period, Mr. Crowley signed the Abell Deed, which transfers the Property to the debtor. The Abell Deed was acknowledged to be executed by Mr. Crowley on July 14, 2004. ECF 1-2. It was recorded on March 23, 2007. *Id.*

The Defendant submitted a statement in opposition to the motion that describes the transaction with Mr. Baltimore and the debtor as follows:

> On July 10th of 2004 a person identifying himself as Calvin M. Baltimore appeared at the property 1416 Half St. SW Washington D.C. 20024 and asked if Defendant was having financial problems and needed a loan. Defendant replied that she was discussing with several potential sources for a loan. Defendant also advised Baltimore that she was legally blind. Baltimore said he could help and requested that she sign several documents which were non-binding but would allow him to be ready to loan money to her should she need it quickly. Baltimore misrepresented the contents of the documents that she signed as being documents to allow him to check Defendant's credit reports, a non-binding agreement for the loan and another document for repayment should she choose to take the loan. Baltimore did not disclose that he was working with Vincent Abell and took all of the signed documents with him leaving the Defendant with no copies of said documents. Baltimore left a card which only identified himself with a telephone number. He did however advise Defendant that she could cancel the agreements if she called within a 3 day period. Defendant exercised her right to cancel the contract through numerous phone calls to Baltimore up to the Defendant's rightful cancelation [sic] date of July 13th 2004 and left numerous messages that she was

cancelling any agreement she signed with Baltimore and was not moving forward. Baltimore left two phone messages for Defendant approximately one month after July 13th 2004 stating that she had received Defendant's calls and maybe they could work out their differences in the agreements if she still needed the loan. Defendant's only calls to Baltimore were to cancel the [sic] any agreements that she may have signed.  Verification of this is contained in memos from Baltimore to Daniel Crowley[.] [sic] Attached hereto are true and correct copies of said memos sent by Baltimore that clarify that the agreements with Defendant were not final[.] [sic] Exhibit 8.  Additionally these Baltimore memos confirm that Baltimore used a lease and buyback agreement with Ms. Basnett that was used for all of this clients.  These fraudulent lease and buyback agreements have been found to be illegal, unconscionable and unenforceable in Maryland by the Circuit Court of Prince Georges County (Tommy A. Smith v. Vincent Abell).

ECF 37 at p. 5 of 108.

 The Defendant recorded the Defendant's Deed prior to the recordation of the Abell Deed.  The Defendant's Deed is dated November 3, 2004, and was recorded that date.  Neither Mr. Crowley nor the Defendant signed the Defendant's Deed.  Indeed, it is not signed by any grantor or grantee and the space where the Notary Public certifies the name of the person signing the deed is blank.  ECF 1-4 at p. 2 of 3.

Also filed on November 3, 2004, was a Real Property Recordation and Transfer Tax Form.  ECF 37 at pp. 89-90 of 108.  This document describes the Defendant as both the grantor and grantee, includes the Defendant's signature, and was notarized.  *Id.* at p. 89 of 108.

On June 14, 2012, Mr. Cooper sent an email to Amy Conn, Deputy Recorder of Deeds for the Office of the Recorder of Deeds, requesting information on the ownership of the Property:

On November 3, 2004, Jocelyn and I met personally with Mr Larry Todd DC Recorder of Deeds to record her deed as she was the widow sole heir to Carl Mason Basnett's estate. Mr Todd advised us that someone had attempted to record a deed for the above property a few months earlier, but it was rejected for "irregularities". Mr Todd gave Jocelyn a questionnaire to fill out and left the room to do some research on the property. Approximately 1 hour later Mr. Todd

returned and confirmed to us that Ms. Basnett was the sole owner of the property and approved the recordation of the deed in her name as the sole owner.

ECF 50 at p. 19 of 25.  On June 15, 2012, Ms. Conn responded to Mr. Cooper's email:

> Thank you for your patience as our office looked into this matter. Jocelyn Cordice Basnett is the owner of record. I have attached a copy of the deed for your convenience.

*Id.*

## Procedural History

The Defendant was represented initially in this adversary proceeding on a *pro bono* basis by the law firm of DLA Piper LLP.  The firm withdrew from the representation due to irreconcilable differences.  ECF l7.

The Plaintiff filed his motion for summary judgment based primarily on the Defendant's failure to respond to requests for admissions.  ECF 27; 27-1.  The requests were served on the Defendant in the month after DLA Piper withdrew.  After addressing the matter at a hearing on March 18, 2015, the court continued the hearing to allow the Defendant to address the failure to respond to the requests:

> [T]he Plaintiff served on Defendant the Plaintiff's Requests for Admissions of Facts and Genuineness of Documents on October 16, 2014. ECF No. 20. The Defendant never responded to the requests. Under Federal Rule of Civil Procedure 36(a)(3), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7036, the unresponded to requests constitute admissions, and the Plaintiff relies on the admissions in support of his motion for summary judgment. The Defendant is currently unrepresented, but receives assistance from a Mr. Cooper, who states that he retired as a District of Columbia attorney some time ago.

ECF 46 at p. 3 of 4.  The court entered an order giving the Defendant sixty days to make any filing she deemed appropriate with respect to the requests for admissions.  *Id*. at p. 4 of 4.

The Defendant made several filings in response to the order.  She filed complete responses to the requests, including exhibits in support of her responses.  ECF 49.  She also filed

8

an Amendment to Plaintiff's Response to US Bankruptcy Judge Catliota's Order Setting Continued Hearing on Summary Judgment and Allowing Further Filings (the "Amendment"). ECF 52. In the Amendment, the Defendant described the reasons she did not file a timely response to the admissions. ECF 52 at pp. 2-3 of 25.

The court will treat the Amendment as a motion by the Defendant under Fed. R. Civ. P. 37(b) to withdraw the admissions resulting from her failure to answer the requests. She states that she is legally blind and permanently disabled, and was very ill during the period prior to the filing deadline. In light of her filing, and taking into account the withdrawal of DLA Piper at the time, the court permits the Defendant to withdraw the deemed admissions. Doing so will promote the presentation of the merits of the action and the court is persuaded that the Plaintiff will not be unduly prejudiced. Fed. R. Civ. P 36(b); *Kress v. Food Emplrs. Labor Rels. Ass'n*, 285 F. Supp. 2d 678, 681 (D. Md. 2003).

Mr. Cooper's role, however, remains unclear. He admits to typing and filing the Amendment and the Defendant's responses to the admission filed at ECF 49. ECF 52 at p. 2-3. And many of the Defendant's filings are written in a legal style. He has appeared with the Defendant at hearings, and describes himself to be the Defendant's "personal care assistant." ECF 54 at pp. 2-3 of 25. Mr. Cooper acknowledged he is a former District of Columbia attorney who retired from the full time practice of law in 1982 and from the part-time practice of law in 2006. The Plaintiff noted that, as stated in *In re Cooper*, 936 A.2d 832 (D.C. 2007), Mr. Cooper's license to practice law was suspended for 30 days in 2007. The suspension order imposed requirements for the license to be reinstated, *id*. at 835, and Mr. Cooper does not contend that he has met those requirements. ECF 54 at p. 3 of 25.

The Defendant has participated in the hearings before the court. She also has requested that Mr. Cooper be allowed to speak on her behalf. The court has denied those requests but has allowed the Defendant to supplement the record after the hearing with a statement signed by her.

Whatever Mr. Cooper's current role in these proceedings may be, it is clear from the record that he played a central role in the events leading to the Abell Deed and the Defendant's Deed, including apparently representing the Defendant in the 2004 transaction with the debtor while he was licensed to practice law. This point will be addressed further below.

Finally, on December 16, 2016, U.S. Bank Trust National Association as Trustee for Towd Point Master Funding Trust 2014-RMl, moved to intervene in this proceeding. ECF 57. It alleged that it holds a note and deed of trust against the Property executed by the Defendant dated August 25, 2006. It asserted an interest in the Property that may be impaired by a resolution of the action and sought to intervene to protect its interest. The Trustee opposed the motion and it was set for hearing. The movant withdrew the motion to intervene on April 4, 2017.[1]

## Conclusions of Law

A motion for summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Under Rule 56, the court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] Even before the motion to intervene was filed, the court deferred ruling on the cross-motions based on events occurring in the debtor's main bankruptcy case. Specifically, the Plaintiff recovered some 37 parcels of real estate from various entities through a much litigated adversary proceeding. As a result, there was a likelihood that creditors could be paid in full. In the event creditors were to be paid in full, the court likely would have abstained from this proceeding and allowed the debtor and the Defendant to resolve their disputes elsewhere. It is now apparent creditors will not be paid in full and this matter is appropriate for resolution here.

of law." Fed. R. Civ. P. 56(c). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

> In evaluating a summary judgment motion, a court "must consider whether a reasonable [factfinder] could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex*, 190 F.3d at 633. In doing so, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 351-352 (4th Cir. 2007).

If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment. A party opposing summary judgment "may not rest upon the mere allegations or denials of [his or her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Those specific facts must be supported by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) ("The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must come forward with specific facts showing that there is a genuine issue for trial.") (internal quotation and citation omitted). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC.*, 630 F.3d 351, 354 (4th Cir. 2011).

The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Charles A. Wright, et al., Federal Practice & Procedure §2720 (3d ed. 1998).

Here, each party disputes the validity and priority of the deed offered by the other party. The court will address each in turn.

*The Abell Deed.*

The Defendant contends that the Abell Deed is not valid because Mr. Crowley had ceased being the personal representative of the estate by July 14, 2004, and therefore he had no authority to sign it.  She also contends the Abell Deed was obtained by fraud and that she timely rescinded the sale agreement that led to the Abell Deed.

In support of her assertion that Mr. Crowley's appointment terminated before July 14, 2004, the Defendant relies on "A Guide to Probate in the District of Columbia," published by the Office of the Register of Wills, Probate Division.  Paragraph K of the Guide, entitled "Closing the Estate," states:

> A probate estate is not ready to close until all assets have been marshaled, all claims or debts have been dealt with, and the remaining assets have been distributed.  Unsupervised estates close and the appointment of the personal representative terminates in one of two ways: (1) automatically three years from the date of the appointment of the personal representative or (2) sooner, if the personal representative chooses to file a certificate of completion with the Court. The filing of a certificate of completion is discretionary, not obligatory, and such a certificate should only be filed if the personal representative is sure that all of his or [her] duties have been completed and all assets have been distributed.
>
> Supervised estates close automatically with the approval of a final account by the Court, and the appointment of the personal representative terminates then if the final account requests termination, the receipts have been filed or no receipts are required, and the Court approves termination.  More often, the appointment of the personal representative terminates after the approval of a final account when all

receipts have been filed and a petition for termination is filed and granted by the Court.

ECF 37 at p. 16 of 108.

The Defendant argues that the approval of the Second and Final Account had the effect of closing the estate, and therefore Mr. Crowley's appointment as personal representative was terminated at that time.  She contends that as a result of Mr. Crowley's termination and the closing of the estate, she inherited the Property as the sole remaining heir and became the fee simple owner, consistent with Mr. Crowley's stated intention in the Second and Final Account. ECF 56 at p. 5 of 12.

The Certification and Order, however, expressly states "[i]t is further ordered that the matter of termination of the appointment of the personal representative is held in abeyance pending the approval of a petition filed in accordance with Probate Division Rule 123."  ECF 37 at p. 78 of 108.  Thus, contrary to the Defendant's assertion, by the express language of the Certification and Order, Mr. Crowley's appointment as personal representative was not terminated upon the approval of the Second and Final Account.  There is no evidence before the court that Mr. Crowley or anyone else filed the Rule 123 Termination of Appointment form. Moreover, the Plaintiff points to a letter Mr. Crowley wrote to the Defendant dated September 1, 2004.  In it, Mr. Crowley states he is "the personal representative of Mr. Basnett's estate."   ECF 56-1 at p. 12 of 17.

Therefore, on the record before the court, the court concludes that Mr. Crowley remained the personal representative of Mr. Basnett's estate as of July 14, 2004.  Judge Hamilton's Certification and Order expressly stated the appointment was not terminated and there is nothing before the court that establishes the appointment was terminated before July 14, 2004.

Furthermore, Mr. Crowley's plain statement in the September 4 letter establishes that he understood he remained the personal representative on that date.

The court turns to the Defendant's assertions that the Abell Deed should be declared invalid because it was obtained by fraud, and even if not obtained by fraud, she timely rescinded the Sale Agreement.

District of Columbia law recognizes instances where a conveyance is void *ab initio,* that is, "null from the beginning and nothing can cure it." *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 134 (D.D.C. 2011) (quoting *Julian v. Buonassissi*, 963 A.2d 234, 244 (Md. Ct. Spec. App. 2009)). Forged deeds are uniformly considered void *ab initio*. *Id.* at 135; *M.M. & G., Inc. v. Jackson,* 612 A.2d 186, 191 (D.C. 1992) ("It is well settled that a forged deed cannot validly transfer property and that even a bona fide purchaser takes nothing from that conveyance."). Here, the Defendant does not allege that Mr. Crowley's signature was forged on the Abell Deed. Therefore the question is whether the Abell Deed is otherwise void *ab initio*.

A non-forged deed may be void *ab initio* if obtained by "fraud in the factum." *Chen*, 768 F. Supp. 2d at 135. Fraud in the factum is defined as "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Id.* (citation omitted). To assert successfully fraud in the factum, a party must show excusable ignorance as a result of having no reasonable opportunity to obtain knowledge about the true nature of the document before signing it. *Id.*; *see also* D.C. Code §28:3-305, Official Comment 1 (West 2017) (explaining that "[t]he test of the fraud in the factum defense is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge."). Official Comment 1 to D.C. Code §28:3-305 also provides:

> In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the intelligence, education, business experience, and ability to read or understand English of the signer. Also relevant is the nature of the representations that were made, whether the signer had good reason to rely on the representations or to have confidence in the person making them, the presence or absence of any third person who might read or explain the instrument to the signer, or any other possibility of obtaining independent information, and the apparent necessity, or lack of it, for acting without delay. Unless the misrepresentation meets this test, the defense is cut off by a holder in due course.

D.C. Code §28:3-305, Official Comment 1; *see also Chen*, 768 F. Supp. 2d at 136 ("A court will not find fraud in the factum where the signer of the agreement 'is capable of reading and understanding the content of the document' and simply fails to do so.") (quoting *Brown v. Carlson,* 2009 WL 2914191 at *4 (Mass. Super. Ct. Sept. 1, 2009)).

"Successful invocations of the fraud in the factum defense are rare, and only in the most extreme situations have courts of any jurisdiction found a fraud in the factum defense to be viable." *Id.* (internal quotations and citation omitted). For example, *Brown* dealt with factual scenario similar to the case at bar. In that case, a widow in her sixties with an eighth-grade education was approached by a woman offering to help the widow save her home from foreclosure. *Brown,* 2009 WL 2914191 at *1. Ultimately, the woman induced the widow into signing a quitclaim deed conveying title in her home and then renting it back at a reduced monthly rate. *Id.* Several months after the conveyance, the widow realized she had been defrauded and brought suit against the woman. *Id.* At summary judgment, the court acknowledged that the widow's "financial insecurity and anxieties about losing her home likely made her more susceptible to any misrepresentations." *Id.* at *6. Nonetheless, the court found that the widow "had a reasonable opportunity to examine and seek help in understanding [the deed's] contents," given that she was an English speaker, had the ability to read, and had

previous experience with the mortgage process. *Id.* at *5-6. Therefore, the court held that the widow failed "to create a triable issue as to fraud in the factum." *Id.* at *6.

Here, it is a close question whether the Defendant has raised a triable issue on her fraud in the factum claim. The Defendant has submitted a statement in which she states that Mr. Baltimore misrepresented the contents of the documents he submitted to her. ECF 37 at p. 5 of 108. She further states she was legally blind and disabled in 2004, and was unable to determine their true nature because of her disability. These statements certainly weigh in favor of her claim. On the other hand, the "true and correct" documents she submits in support of her claim—the Sale Agreement, the Unsigned Lease and the Unsigned Option—show that Mr. Cooper, who was an attorney at the time, was active in negotiating the documents and signed them as a witness and as an attorney. If, as it appears, Mr. Cooper was representing the Defendant, it is doubtful she could establish she had "no reasonable opportunity to obtain knowledge about the true nature of the document before signing it." *Chen*, 768 F. Supp. 2d at 135. Mr. Cooper's role in these transactions, however, is not clear from the record.

On summary judgment, the court does not to make credibility determinations, weigh the evidence, or draw inferences from the facts. *See Anderson*, 477 U.S. at 255. Therefore, the court concludes that the issue of whether the Defendant had a reasonable opportunity to obtain knowledge about the true nature of the documents before signing them will be left for trial.

The court reaches the same conclusion on the Defendant's contention that she timely rescinded the sales transaction. She states that she exercised her right to cancel the contract through numerous phone calls to Mr. Baltimore prior to the cancellation date, and left numerous messages that she was cancelling any agreement she signed with Baltimore and was not moving forward. ECF 37 at p. 5 of 108. Her statements are not contrary to the signed Sale Agreement

16

because the cancellation would have occurred after the agreement was signed. They are, however, inconsistent with the Lease and Option Agreement, which are not notarized or witnessed. The Defendant would have had no need to sign those documents if she had rescinded the transaction. In her response to the requests for admissions, however, the Defendant states that she did not sign the Lease and the Option Agreement, and they are a forgery and a fraud. ECF 49 at p. 4 of 34. Therefore, the question of whether the Defendant rescinded the Sale Agreement will be left for trial.

*The Defendant's Deed.*

The Plaintiff disputes the validity of the Defendant's Deed. He argues that an unsigned deed is ineffective to transfer an interest in real property under District of Columbia law. D.C. Code Ann. § 42-407(1) ("The Recorder of Deeds shall not …[a]ccept for recordation any instrument unless the instrument is executed and acknowledged according to law by the person granting … his or her right, title, or interest in the real property."). Alternatively, he argues that, even though the Defendant's Deed was recorded first, the Defendant did not take for value and without notice of the Abell Deed. Therefore, the Abell Deed would have priority under District of Columbia law.

The validity and priority of the Defendant's Deed needs to be resolved in this proceeding only if the court finds, after trial, that the Abell Deed is valid. If the court determines the Abell Deed is not valid, then the estate would appear to hold no interest in or claim against the Property, and the validity of the Defendant's Deed is not a matter for this court. If the court determines the Abell Deed is valid, then the validity of the Defendant's Deed and the priority between the two deeds must be resolved.

With the foregoing in mind, the court will turn to the question of the priority between the two deeds, assuming the Abell Deed is found to be valid. Under the D.C. Code, a first recorded deed is preferred over a later recorded deed. Section 42-406 of the D.C. Code provides "[w]hen

2 or more deeds of the same property are made to bona fide purchasers for value without notice, the deed or deeds which are first recorded according to law shall be preferred."  A party that acquires an "interest in a property for valuable consideration and without notice of any outstanding claims which are held against the property by third parties" is considered a bona fide purchaser.  *Chen*, 768 F. Supp. 2d at 134 (quoting *Smith v. Wells Fargo Bank,* 991 A.2d 20, 26 (D.C. 2010).  A bona fide purchaser holds a valid interest in the property and will be "protected from outstanding interests in the property of which it had no notice."  *Chen*, 768 F. Supp. 2d at 134 (citing *Haley v. Corcoran,* 659 F.Supp.2d 714, 722 (D. Md. 2009)).  District of Columbia courts have held that "the determinative factors are whether a party takes an interest in the property in exchange for value and without notice of an outstanding claim."  *See Assocs. Fin. Servs. of Am. v. District of Columbia*, 689 A.2d 1217, 1222 (D.C. 1997).

Here, the Defendant did not take her interest in exchange for value.  She received it through the inheritance from Mr. Basnett.  It has long been the law that:

> A person who is a mere volunteer, having acquired title by gift, inheritance, or some kindred mode, cannot come within the scope of the term bona fide purchaser. To enable the grantee to claim protection as a bona fide purchaser he must have parted with something possessing an actual value, capable of being estimated in money, or he must on the faith of the purchase have changed, to his detriment, some legal position that he before had occupied.

*Lykins v. McGrath*, 184 U.S. 169, 173 (1902) (citation and quotations omitted).  Accordingly, the Defendant cannot obtain the status as a bona fide purchaser.

The point may be less significant than it appears in light of the issues left for trial.  If, after trial, the court concludes that the Abell Deed is not valid, then whether the Defendant is a bona fide purchaser is irrelevant to this proceeding.  If, however the court concludes the Abell Deed is valid, then presumably its conclusion would be based on a finding that the Defendant

had knowledge of the transactions and opportunity to understand them, thereby further establishing her lack of status as a bona fide purchaser.

## Conclusion

For the foregoing reasons, the court will deny the cross-motions for summary judgment. In doing so, however, the court concludes that Mr. Crowley remained the personal representative of Mr. Basnett's estate as of July 14, 2004.  Therefore, he was authorized to sign the Abell Deed. The court further concludes that the questions of whether the Abell Deed was obtained by fraud and whether the Defendant rescinded the Sale Agreement that led to the Abell Deed will be left for trial.  Finally, the court determines that the Defendant cannot assert the status as a bona fide purchaser for value.  A separate order will follow.

cc:      All Parties
         All Counsel

**END OF MEMORANDUM OF DECISION**